IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ANASTASIA I CULLY,**                  Case No. 5:18 CV 390

    Plaintiff,

    v.                                                Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                        MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Anastasia I. Cully ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 9). For the reasons stated below, the undersigned reverses the decision of the Commissioner and remands for further proceedings consistent with this opinion.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI in August and October 2014, alleging a disability onset date of February 5, 2005. (Tr. 176-77, 184-89). Plaintiff's date last insured for DIB purposes was September 30, 2010. *See* Tr. 13. Her claims were denied initially and upon reconsideration. (Tr. 91, 103, 106-09, 114-17). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 121). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on November 29. 2016. (Tr. 28-70). On December 21, 2016, the ALJ

issued a partially favorable decision. (Tr. 11-21). Therein, he found Plaintiff not disabled prior to May 3, 2013 (Tr. 20), but that she became disabled on that date because she turned 55 years old, and Rule 202.06 of the Medical-Vocational Guidelines[1] directed a finding of disabled. in a written decision. (Tr. 11-21). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6); *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on February 19, 2018. (Doc. 1).

## FACTUAL BACKGROUND[2]

Personal Background and Testimony

Born in 1958, Plaintiff was 46 years old on her alleged onset date of February 5, 2005. *See* Tr. 176. Plaintiff alleged disability due to problems with her: back, right tibia, neck, right knee, chronic migraines, head injury, anxiety, and depression. (Tr. 208). At the time of the hearing, Plaintiff lived with her elderly mother. (Tr. 40). Plaintiff had a driver's license and was able to drive. (Tr. 40-41). She only drove short distances, however, and her neighbor brought her to the hearing. (Tr. 41-42).

---

1. 20 C.F.R. Part 404, Subpt. P, App'x 2, Rule 202.06.

2. To be entitled to DIB, Plaintiff must show disability prior to the expiration of her insured status (here, September 30, 2010, *see* Tr. 13). *See* 20 C.F.R. § 404.130; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Therefore, the relevant period for Plaintiff's DIB claim is February 5, 2005 through September 30, 2010. To be entitled to SSI, Plaintiff must show she was disabled while her SSI application was pending. *See* 42 U.S.C. § 1382c; 20 C.F.R. §§ 416.330, 416.335. Therefore, the relevant period for Plaintiff's SSI claim was October 17, 2016 through December 21, 2016 (the date of the ALJ's decision). However, the ALJ found Plaintiff disabled as of May 3, 2013, and therefore the only relevant period before this Court on appeal is the first one – February 5, 2005 through September 30, 2010. *See* Doc. 15, at 1 ("Ms. Cully also agrees with Defendant that the relevant time period before the ALJ was February 5, 2005 through September 30, 2010.").

Plaintiff testified to a job injury in 2002, and that she had been using a prescribed walker and a cane for balance six or seven years. (Tt. 46-47). Her balance was affected by her right leg and lower back. (Tr. 47). At the time of the hearing, Plaintiff was using a quad cane. (Tr. 48).

Plaintiff explained she had constant pain in her back, with fluctuating intensity, for which she took pain medication, muscle relaxers, and anti-inflammatories. *Id.* The pain worsened with walking or sitting. *Id.* Plaintiff had difficulty cleaning the house due to her physical impairments. (Tr. 53). Plaintiff took the trash out and washed the laundry. *Id.* Her mother did all the dishes and cooking, as well as folding and putting away the laundry. (Tr. 53, 58). A neighbor did the grocery shopping and took Plaintiff to her doctor's appointments. (Tr. 59). For pain relief, Plaintiff wore a back brace, used a heating pad, used Voltaren gel, and received Toradol injections and "blocks" in her back. (Tr. 55). The Toradol reduced the pain for a few days; the blocks helped more, but could not be performed as frequently. *Id.*

Plaintiff reported depression, anxiety, and bipolar disorder. (Tr. 51). She had trouble with motivation, but no difficulty being around others. (Tr. 52). She had difficulty sleeping. (Tr. 56). She also reported migraines, knee issues, numbness and lack of grip strength in her hands, and difficulty reaching. (Tr. 54, 60-61).

Plaintiff testified she saw Dr. Iemma regularly ("He's my main doctor for everything"), as well as Dr. Nanjudiah, Dr. Waltman, and Dr. Pitt. (Tr. 50).

<u>Relevant Medical Evidence</u>

In November 2006, Plaintiff saw Susan Firster, PA-C, and Kamel Muakkassa, M.D. (Tr. 286). Plaintiff complained of back and neck pain following a work injury in 2002. *Id.* These providers noted Plaintiff was unable to perform a heel walk, had decreased right upper extremity strength, and weak lower extremity muscles. *Id.* Plaintiff also had a positive straight leg raising

3

test bilaterally, an absent Achilles reflex, and decreased sensation in the right lower extremity. *Id.* Plaintiff was instructed to obtain new MRIs of the lumbar and cervical spines. *Id.*

In March 2007, Dr. Muakkassa reported Plaintiff had right-sided leg pain, with "very minimal" numbness in the buttock region, and in the thigh to the knee. (Tr. 1167). He noted physical therapy was "helping her some", but she had continued symptoms. He planned to schedule a right-sided L4-L5 nerve block, noted her MRI showed a small right-sided disc herniation, and did not think Plaintiff needed surgery. *Id.*

In April 2008, Dr. Muakkassa performed an L4-L5 microdecompression foraminotomy on Plaintiff's back, noting that her pain had not responded to conservative management. (Tr. 274-75); *see also* Tr. 276 (intake notes indicating Plaintiff had undergone physical therapy, chiropractic treatments, and three series of epidural blocks). At a follow up appointment in October, Plaintiff continued to have pain "mainly across her back and slightly on the right side of the incision with some numbness in that area." (Tr. 272). She reported some pain going occasionally to the left buttock and the posterior part of her knee. *Id.* Dr. Muakkassa noted Plaintiff had no atrophy, and her gait was "within normal", as was her lower extremity strength. *Id.* She had a slight tilt to the left, and slightly decreased range of motion to the right in her back. *Id.* Dr. Muakkassa ordered flexion and extension x-rays, and instructed Plaintiff to continue physical therapy. *Id.* He also noted Plaintiff was "taking pain medication and Dr. Iemma would follow her for that." *Id.*

The record also contains treatment notes from Dr. Iemma from February 2008 through October 2010. *See* Tr. 771-836. These reflect that Dr. Iemma treated Plaintiff's back and neck conditions approximately monthly during this period, noting pain, decreased ranges of motion, and spasm. *See id.*

Additionally, Dr. Iemma continued to treat Plaintiff's physical conditions after her date last insured, through July 2014. *See* Tr. 729-70.

*Opinion Evidence - Physical*

In June 2007, Dr. Iemma (Plaintiff's physician of record regarding her workers compensation claim), wrote a letter stating Plaintiff "suffer[ed] from significant debility secondary to [her work-related] injuries." (Tr. 1172). He noted Plaintiff had ongoing pain, spasm, tightness, decreased range of motion, and decreased function. *Id.* He stated Plaintiff "ha[d] debility and will require ongoing treatment, but should be able to have significant rehabilitation." *Id.*

In April 2010, physical therapist Carmen Markley, completed a functional capacity evaluation of Plaintiff. (Tr. 1101-05). She opined Plaintiff "currently tolerates activities within light-medium to medium level. (Tr. 1105) Plaintiff "appear[ed] appropriate for a Return to Work Conditioning program due to continued physical deficits" and "could benefit from Vocational Rehab to prepare her for return to work. *Id.*

In May 2014, physical therapist Jamie Leister performed a functional capacity evaluation for workers compensation and opined Plaintiff did not meet the physical demands of her prior job, but "does meet the sedentary demand level with the ability to stand/walk occasionally and lift/carry 10#." (Tr. 1111).

In July 2014, Dr. Iemma completed a physical functional capacity questionnaire. (Tr. 951-53). He opined Plaintiff could walk one city block, sit continuously for fifteen minutes, and stand continuously for five minutes. (Tr. 951). He estimated Plaintiff could sit, stand, or walk for one hour in an eight-hour workday, and sit, stand, and walk for three hours total in an eight-hour workday. *Id.* He noted Plaintiff would need to lie down or rest at unpredictable intervals throughout the day. (Tr. 952). He opined Plaintiff could lift less than ten pounds occasionally (defined as 1/3

5

of a working day), and never lift more; she could not stoop or crouch. *Id.* Dr. Iemma estimated Plaintiff would miss more than four days of work per month due to impairments or treatment. *Id.*

In December 2014, state agency physician Esberdado Villanueva, M.D., reviewed Plaintiff's records and opined that—prior to her date last insured—Plaintiff could perform sedentary exertional work with some additional postural, manipulative, and environmental limitations. (Tr. 85-89).

In April 2015, state agency physician Bradley Lewis, M.D., reviewed Plaintiff's records and opined that—prior to her date last insured—Plaintiff could perform light exertional work with some additional postural, manipulative, and environmental limitations. (Tr. 98-100)

*Opinion Evidence – Mental*

In August 2014, Dr. Wilcoxson completed a Mental RFC Assessment form. (Tr. 970-76). She noted the assessment covered the period from August 5, 2014 through August 12, 2014 and listed Plaintiff's diagnoses as major depression and generalized anxiety. *Id.* She opined Plaintiff was markedly limited in her ability to understand and remember detailed instructions, and moderately limited with respect to short and simple instructions. *Id.* Plaintiff had marked limitations in several categories involving sustained concentration and persistence (including the ability to complete a normal workday and workweek) (Tr. 973), but few limitations regarding social interaction (Tr. 974). She opined Plaintiff had marked limitation in the ability to respond appropriately to changes in the work setting, and moderate limitation in the ability to set realistic goals or make plans independently of others. *Id.* Dr. Wilcoxson attached a typed explanation, in which she opined, *inter alia*, that she thought it "unlikely that Ms. Cully will be able to consistently perform a job which has even low levels of stress." (Tr. 976).

In December 2014, state agency psychologist Paul Tangeman, Ph.D., reviewed Plaintiff's records and opined there was insufficient evidence to evaluate Plaintiff's mental health claim prior to her date last insured. (Tr. 84-85). In April 2015, state agency psychologist Bruce Goldsmith, Ph.D., concurred. (Tr. 96-97).

VE Testimony

A VE also appeared and testified at the ALJ hearing. (Tr. 63-69)[3]. The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and past work experience who was limited in the way in which the ALJ ultimately found Plaintiff to be. (Tr. 64-66). The VE testified such an individual could not perform Plaintiff's past relevant work, but could perform other work. (Tr. 66).

ALJ Decision

In a written decision dated December 21, 2016, the ALJ found Plaintiff met the insured status requirements for DIB through September 30, 2010, and had not engaged in substantial gainful activity since her alleged onset date. (Tr. 13). Plaintiff had severe impairments of spine disorder, obesity, status post ankle fracture, affective disorder, and anxiety disorder, but none of these impairments (singly or in combination) met or medically equaled the severity of a listed impairment. (Tr. 13-14). The ALJ then determined Plaintiff had the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567 and 416.967 except she can occasionally reach overhead bilaterally. She can frequently climb ramps and stairs but never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl and is limited to simple routine tasks.

---

3. The undersigned notes that the transcript of the hearing appears to be incomplete, missing at least one page at the end. *See* Tr. 69-70.

(Tr. 14). The ALJ concluded Plaintiff could not perform any past relevant work, but, prior to May 3, 2013, considering her age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy Plaintiff could have performed. (Tr. 19-20). On May 3, 2013, Plaintiff turned 55, and her age category changed (to a person "of advanced age", *see* 20 C.F.R. §§ 404.1563(e), 416.963(e)). *See* Tr. 19-20. Applying Medical-Vocational Guideline Rule 202.06, the ALJ thus found that Plaintiff was disabled as of May 3, 2013. (Tr. 20-21). In conclusion, the ALJ found Plaintiff was not disabled prior to May 3, 2013 (and therefore not disabled prior to her September 30, 2010 date last insured), but became disabled on that date. (Tr. 21).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn

"so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and

9

meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ failed to follow the appropriate legal standard in evaluating two treating physician opinions – those of Dr. Iemma and Dr. Wilcoxson. The Commissioner responds that any error is harmless given the timeline of this case. For the reasons discussed below, the undersigned finds the ALJ erred in his failure to consider Dr. Iemma's opinion and reverses and remands for further proceedings.

Treating Physician Rule

In general, medical opinions from a treating source are given more weight than those from a non-treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Medical opinions are defined as "judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

The treating physician rule requires the ALJ to assign a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinic and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c), 416.927(c)[4]; *Turk v. Comm'r of Soc. Sec.*, 647 F. App'x 638,

---

4. Although recent revisions to the CFR have changed the rules regarding evaluation of treating physician opinions, such changes apply to claims filed after March 27, 2017, and do not apply to claims filed prior to that date. *See* Social Sec. Admin., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5852-53, 2017 WL 168819.

10

640 (6th Cir. 2016). Where an ALJ does not give controlling weight to a treating source opinion, he weighs that opinion as directed by the regulations, using the factors in 20 C.F.R. §§ 404.1527(c)(2)-(6); 416.927(c)(2)-(6). This does not require an "exhaustive, step-by-step analysis," but merely "good reasons" for the ALJ's weighing of the opinion. *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) (citation omitted). These good reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion, and the reasons for that weight." SSR 96-2p, 1996 WL 174188, at *5. "Because of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007). And failure to discuss a treating physician opinion is reversible error. *See Blakely v. Comm'r of Soc. Sec.*, 581 F. 3d 399, 407 (6th Cir. 2009) (finding reversible error where the ALJ placed no findings "on the record" with respect to a treating physician's opinion).

As the Sixth Circuit summarized in a recent decision:

* * * The justification for this requirement is two-fold: (1) it helps a claimant to understand the disposition of her case, especially "where a claimant knows that h[er] physician has deemed h[er] disabled," and (2) it "permits meaningful review of the ALJ's application of the [treating-source] rule." *Wilson*, 378 F.3d at 544. We have been clear that we will remand "when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and [that] we will continue remanding when we encounter opinions from ALJ's that do not *comprehensively* set forth the reasons for the weight assigned to a treating physician's opinion." *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (emphasis added) (quoting *Wilson*, 378 F.3d at 545).

Remand is not necessary, however, if the ALJ's failure to provide good reasons is a "harmless *de minimis* procedural violation." *Blakley,* 581 F.3d at 409. Although we have yet to define "harmless error" in this context, we have identified three

situations in which it might occur: (1) where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," (2) where "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," and (3) "where the Commissioner has met the goal of ... the procedural safeguard of reasons." *Wilson*, 378 F.3d at 547. With respect to the last of these circumstances, "the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010). That said, "[a] procedural error is not made harmless simply because [the claimant] appears to have ... little chance of success on the merits[,]" *Wilson*, 378 F.3d at 546 (quoting *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n.41 (D.C. Cir. 1977) ); and where the error makes meaningful review impossible, the violation of the good-reasons rule can never qualify as harmless error, *Blakley*, 581 F.3d at 409.

*Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 438 (6th Cir. 2018).

*Dr. Iemma*

The parties agree that the ALJ failed to mention Dr. Iemma's August 2014 opinion. *See* Doc. 13, at 8; Doc. 14, at 8. And the Commissioner concedes that Plaintiff "is generally correct that an ALJ's failure to discuss the opinion of a treating source would normally require a remand". (Doc. 14, at 8). However, the Commissioner contends that "given the unusual gap in the relevant time periods in this case, Dr. Iemma's August 2014 opinion was not relevant to this case, other than to determine that Plaintiff was disabled by August 2014, a finding the ALJ had already agreed to in Plaintiff's favor." *Id*.

The Commissioner's argument on this point certainly holds logical appeal: Dr. Iemma's opinion was not offered during the relevant time period in which the ALJ found Plaintiff not disabled, and does not state on its face that it relates back to the relevant period. Therefore, what can be the harm in failing to discuss it? That said, "[a] procedural error is not made harmless simply because [the claimant] appears to have . . . little chance of success on the merits[,]" *Wilson*, 378 F.3d at 546 (quoting *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n.41 (D.C. Cir. 1977)).

12

At least one other court has considered, and persuasively rejected, a similar argument from the Commissioner. *See Little v. Comm'r of Soc. Sec.,* 2017 WL 9471679, at *6 (E.D. Mich.), *report and recommendation adopted,* 2017 WL 4276968. The *Little* court reasoned:

> Although the ALJ's failure to mention this treating physician opinion *could* have resulted in harmless error, it is impossible for the Court to discern whether that is the case here because his opinion does not address Dr. Chitturi's opinion *at all*. Per the Regulations, the ALJ "must consider all medical opinions that he or she receives in evaluating a claimant's case." 20 C.F.R. § 416.927(b). Here, the ALJ clearly did not do so. Moreover, the opinion at issue is that of a treating physician, which is generally entitled to deference, and which an ALJ must give good reasons for discounting. Here, while the Commissioner's explanation of the ALJ's *potential* reason for discounting the opinion is somewhat persuasive, it was up to the ALJ to provide that explanation in his opinion. *See Blakely v. Comm'r of Soc. Sec.*, 581 F. 3d 399, 407 (6th Cir. 2009) (finding reversible error where the ALJ placed no findings "on the record" with respect to a treating physician's opinion). Further, this is an instance in which Plaintiff's treating physician has deemed her disabled, leaving her likely to be "especially bewildered" when told by the ALJ that she is not, without even addressing her doctor's opinion. *See Wilson*, 378 F.3d at 544 (internal quotations omitted). As such, I recommend that this matter be remanded to the ALJ for further consideration of Dr. Chitturi's opinion. If the ALJ chooses to discount the opinion, for the reasons outlined in the Commissioner's brief or others, he or she must address those reasons in the opinion, consistent with the Regulations. 20 C.F.R. § 416.927(c)(2). It is not within this Court's authority to reweigh the evidence, much less speculate about what weight would have been given (and why) with respect to a treating physician's opinion that was not even acknowledged by the ALJ.

*Id.* at *6. In adopting the report and recommendation, the district judge further explained:

> Plaintiff was entitled to have the ALJ consider, grapple with, and expressly discuss the opinion from Dr. Chitturi and explain the reasons why he did or did not give weight to that opinion. Given Dr. Chitturi's prior treatment of Plaintiff, her status as a treating physician, and that the September 2014 assessment was based in part on a review of Plaintiff's medical condition from the relevant time period, the Court cannot conclude that the failure to address Dr. Chitturi's September 2014 assessment was harmless error. Consequently, Defendant's objection on this ground is not well-taken, and the Court will adopt the recommendation to reverse the ALJ's decision for failing address Dr. Chitturi's September 2014 assessment in any way.

*Little v. Comm'r of Soc. Sec.,* 2017 WL 4276968, at *4 (E.D. Mich.).

The undersigned finds this analysis applies with equal force here. In this case, Dr. Iemma, treated Plaintiff's back and neck conditions approximately monthly during a substantial part of the relevant time period. *See* Tr. 771-836 (treatment records spanning February 2008 to October 2010). Moreover, Dr. Iemma previously authored an opinion stating Plaintiff had significant disability. *See* Tr. 1192. Although here it is not clear to which time period Dr. Iemma intended for his August 2014 opinion to apply, that determination is for the ALJ to make in the first instance. *See Little,* 2017 WL 9471679, at *6 ("If the ALJ chooses to discount the opinion, for the reasons outlined in the Commissioner's brief or others, he or she must address those reasons in the opinion, consistent with the Regulations."). "It is not within this Court's authority to reweigh the evidence, much less speculate about what weight would have been given (and why) with respect to a treating physician's opinion that was not even acknowledged by the ALJ." *Id.* As such, this matter will be reversed and remanded for the ALJ to consider Dr. Iemma's opinion.

### *Dr. Wilcoxson*

Plaintiff secondly argues the ALJ erred in his evaluation of Dr. Wilcoxson's August 2014 opinion. (Doc. 13, at 9-11). Specifically, she contends the ALJ did not provide good reasons for rejecting the marked limitations in the opinion. The Commissioner responds that given the date of the opinion, and that it did not relate back to the date last insured, "further analysis of this opinion is not relevant to any contested issue in this case" because the ALJ determined Plaintiff to be disabled as of May 3, 2013. (Doc. 14, at 11). In reply, Plaintiff contends this is impermissible *post hoc* rationale. (Doc. 15, at 3).

Preliminarily, the Commissioner's argument sounds in harmless error, which is not *post hoc* rationale. *See Ulman v. Comm'r of Soc. Sec.,* 693 F.3d 709, 714 (6th Cir. 2012) (holding that

Commissioner does not attempt to offer *post hoc* justification of agency action by invoking harmless error).

And, with regard to Dr. Wilcoxson's opinion—in contrast to that of Dr. Iemma's—the undersigned agrees with the Commissioner. On its face, Dr. Wilcoxson's August 12, 2014 opinion states that it is an assessment of Plaintiff's mental capacity from August 5, 2014 through August 12, 2014. (Tr. 973). The ALJ found Plaintiff disabled as of May 3, 2013. (Tr. 19).

Plaintiff characterizes the Commissioner's argument as: "that the ALJ was free to ignore the medical opinion of treating psychologist Dr. Wilcoxson because *it was authored after* her date last insured of September 30, 2010." (Doc. 15, at 3). But the Commissioner expressly argues that "Dr. Wilcoxson's opinion does not relate back to the relevant time period prior to Plaintiff's date last insured . . . because she indicated that her opinion applied to the time period beginning on August 5, 2014." (Doc. 14, at 11); *see* Tr. 973 (stating the assessment applies for the time period of August 5-12, 2014). Thus, the Commissioner does not contend (at least with respect to Dr. Wilcoxson's opinion) that the date of *authorship* that makes the opinion irrelevant (and any error with respect thereto harmless), but rather, the expressed date of the opinion's application renders any error harmless.

The Sixth Circuit has identified three categories of harmless error in the context of the treating physician rule:: (1) where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," (2) where "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," and (3) "where the Commissioner has met the goal of . . . the procedural safeguard of reasons." *Wilson*, 378 F.3d at 547. The ALJ thus here, made findings at least broadly "consistent with" Dr. Wilcoxson's opinion—that Plaintiff had disabling-level mental impairments in August 2014—when he

15

determined her to be disabled as of May 3, 2013. Therefore, even if the ALJ failed to provide the required "good reasons" for discounting Dr. Wilcoxson's opinion, any such error was harmless. *See id.*

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI prior to May 3, 2013 (specifically, denying DIB prior to Plaintiff's date last insured of September 30, 2010) not supported by substantial evidence. Therefore, the undersigned reverses and remands that decision for further consideration of Dr. Iemma's opinion.

    s/James R. Knepp II
United States Magistrate Judge